Case number 16-5242. Reginald L. Ivy, Appellant v. Cmsnr. Internal Revenue Service. Mr. Crum for the amicus curiae. Mr. Carpenter for the appellee. Good morning. Good morning, and may it please the Court. Travis Crum, this Court appointing amicus curiae. I'd like to reserve two minutes of my time for rebuttal. Before you get into the legal arguments, could you just go through the flow of funds, the 1822, the 1188, the 634? Sure. I'd be happy to, Judge Williams. So in September of 2012, an identity thief stole Mr. Ivy's identity and followed a 2011 tax return on Mr. Ivy's behalf. And that tax return claimed an $1,822 overpayment. And the reason for that claim of an overpayment was that the identity thief believed that the U.S. government would cut him a check and he would be able to retain that overpayment for himself, and so that was the sort of purpose of the identity theft scheme there. But the identity thief didn't realize that Ivy's student loans were in default at that time, and therefore the $1,800 was intercepted by the IRS and sent to the Missouri Department of Higher Education and the U.S. Department of Education to offset Ivy's loans. So that was $1,822 to the benefit of Mr. Ivy. That is correct. And then about a year later, in August of 2013, Ivy's student loans were satisfied in full. And as the government recognizes at page 10 of its brief, the U.S. Department of Education informed Fiscal Service at that time that Ivy's debt was paid in full. The next month, in September of 2013, Ivy discovered the fraudulent filing and submitted his real 2011 tax return. And then in January of 2014, that's the wrongful offset that Ivy's claiming here. The $634 overpayment was intercepted by the IRS, and his credit with the Department of Education was decreased by $1,188. So in other words, the windfall involved in the initial $1,822 credit was reduced to an amount that was consistent with Ivy's actual tax liability. That is correct. The IRS notified the Department of Education that that $1,188 was to be credited against the student loans. And it's that reduction of the windfall that is the source of the damage claim? No, Your Honor. The source of the damage claim is Mr. Ivy's belief that he could have made payments on a very high-interest loan that he had taken out and was not able to make it because he was not given the $634 that he wanted in January of 2014. And so there's a couple of places in the record where you can look where Ivy's damages claims are. One example is Joint Appendix page 17, which is the tax court complaint, which Ivy incorporated by reference in his DDC complaint. And there he requests, quote, every payment made to the high-interest bill starting in September and the remaining balance of the bill. Also, Joint Appendix 56 and 57, he claims both punitive damages and compensatory damages and expenses. And then finally, although it's not in the Joint Appendix, Mr. Ivy filed on October 31st in this court evidence of the high-interest loan payments that he's seeking as damages in this case. And I guess the final thing I would say – The high-interest loan has nothing to do with the Department of Education and so forth? Sorry, my understanding is that the high-interest loan is a Title Max loan that Mr. Ivy took out and that he's claiming that he could not make payments on that loan because the government kept his money longer than he anticipated them keeping. And so to the extent that you have any concerns about the claim for compensatory damages in this case, what I would say as an alternative is that at the time that Mr. Ivy filed his complaint, he was still seeking the $634 from the federal government. To the extent that the government attempted to move this case by cutting Mr. Ivy a check for that plus interest, I think it would be fair to Mr. Ivy to give him an opportunity to amend his complaint since he was proceeding pro se in the district court to allow him to elaborate on his claim for damages. I would also point out that under Section 7433d, he's entitled to expenses incurred in this action. And although he's been proceeding IFP in this case, he's certainly incurred some types of expenses in sort of his wranglings with the IRS over the past several years. And so he could make out- If 7433 implies at all. That's correct. Okay. And if I've satisfied your curiosity about the damages claim here, I'd like to turn to the jurisdictional question. And so I think one thing that's really key in this case is to recognize that when Congress enacted Section 7433, it enacted a broader waiver of sovereign immunity for any IRS misconduct taken in connection with the collection of federal tax. And as this Court recognized in Kim, that waiver of sovereign immunity is quite broad. It covers not only collection activities simpliciter, but also collection-related activities. And here are the wrongful offset of Ivy's- I know you stress that. And, of course, it runs to some extent into the general problem that this is a waiver of sovereign immunity. But isn't the greater problem you run into that what's being collected is not a tax, but a debt to the Department of Education? So I take your point, Judge Williams. But I think what's important to realize is that when Congress enacted Section 7433, it was concerned with the abuse and misuse of the IRS's collection authority. And here, the functional difference between the IRS, say, garnishing someone's wages or putting a lien on your property and holding back money that you're entitled to as an overpayment and as a refund, those things are functionally equivalent for someone like Mr. Ivy. And here, I think it's important to recognize that the procedural protections that are embedded for taxpayers in the statutory and regulatory framework for Section 6402 is very similar to the procedural protections for taxpayers in sort of simple collection activities. So, for example, for a collection activity, say, a notice of a lien, the IRS must give you a written notice that they're going to file a lien against you. They must give you a certain period of time to correct the tax deficiency. In the view that you're pursuing, does not any delay? Actually, I don't know if there are rules requiring any promptness in making a refund. But it sounds as if any delay in making a refund triggers 7433. No? I mean, how is Ivy injured here more than anyone who thinks had gone to the normal course would have gotten a refund in May and instead gets it in September? Well, so here the delay is actually several years. The wrongful offset occurred in January 2014. Ivy did not get the $634 plus interest until June of this year. But Ivy's claim is not that he wasn't given the money when he expected it. Ivy's claim is that the IRS misapplied Section 6402D, which applies only to past due legally enforceable debts. And as the government noted at page 10 of its brief, the Fiscal Service was aware in August of 2013 that Ivy's debt was no longer past due. So Ivy's claim is that the IRS misinterpreted the statute. I'm sorry, but the Fiscal Service was aware of that? The Fiscal Service was aware. Is there something imputing that knowledge to the IRS? The IRS denies that it was aware, that Fiscal Service was aware of this. And as we've argued in our brief, there's a lot of evidence in this case that the IRS and Fiscal Service cooperate, that the IRS has a matter of supervisory authority over the Fiscal Service and can push or direct Fiscal Service to take certain types of actions. And then the sort of final point that we argue in our brief is that the distinction between Fiscal Service and the IRS is basically a fictitious one, given that when Congress enacted Section 7433, this type of action was within the IRS's bailiwick. And it wasn't for 10 years after Section 7433's enactment that the Secretary of the Treasury took away the offsetting authority and put part of it in the Fiscal Service's bailiwick. And so what... I'm just wondering if you're done. So the last thing I would just say, as I'm cutting into my rebuttal time, is that Section 6402D also talks about collection in its heading. And given that this Court found in Camden that the sort of placement of a provision and the use of collection in a heading was persuasive evidence that it's a collection-related activity, I think this Court should find that here as well. Thank you. I'd like to reserve the remainder of my time for rebuttal. All right. Mr. Carpenter? May it please the Court. The offset of Mr. Ivey's tax refund against the student loan debt had nothing to do with any collection of federal tax from Mr. Ivey. 7433 does not apply. The waiver of sovereign immunity does not apply  And that simply didn't occur here. The offset was done to collect an unpaid student loan debt. In addition, all of the responsibilities that counsel has attributed to the IRS are actually responsibilities of Fiscal Service. The IRS, the way the process works when a taxpayer is owed a refund is that the IRS sends a certification to Fiscal Service certifying this taxpayer is due a refund in a certain amount. Fiscal Service then takes that certification, compares it against the information in their debt database, and offsets to account for any debt. Does the IRS do that for every refund? Yes, for every refund. It was news to me, and probably it would be to most people, that the IRS does not actually pay our tax refunds. It's the Bureau of the Fiscal Service that sends out the checks. Where is Fiscal Service located? It's the Bureau of the Department of the Treasury. So the IRS and Fiscal Service are both separate bureaus, but within the Department of the Treasury. In fact, 6402 assigned the responsibility for performing offsets to the Secretary of the Treasury. And the Secretary of the Treasury has delegated that responsibility. It used to be delegated to the IRS, but it's at all the times relevant here. It was delegated to Fiscal Service. It's your position that, as I recall, that 6402 be moved towards jurisdiction. Is that correct? Yeah, there were two issues in the district court. One was whether the district court even had jurisdiction to order the IRS to make a refund of that $634. And the district court held, and in our view correctly held, that 6402G precludes any court from reviewing an offset and therefore precluded the court from having jurisdiction to order that relief. So we don't really need to deal with 7433 if we agree with the district court on 6402. Well, so the 6402 issue arguably could deal with the damages issue, but we haven't taken that position here. The 6402G issue would deal with that $634. Although our position is unchanged that there was no jurisdiction to order the IRS to pay that refund, the IRS took a closer look at it and recognized that there was sort of a degree of unfairness in the way that things worked out in this situation because but for the theft of Mr. Ivey's identity, that $634 would have actually been paid to him. And so the IRS took a closer look, applied its current policy, which would have resulted in the outcome that he wanted, and refunded the $634. As a result, the 6402G jurisdictional issue, that's moved. And what's before the court is Mr. Ivey's remaining claim for damages on top of the $634. Whether we have jurisdiction has never moved. Excuse me? Whether we have jurisdiction has never moved. Or the damage claim. Yes, yes, yes, certainly that's not moved, whether the court has jurisdiction over the damages claim. The question of jurisdiction over the $634 refund claim, that's moved because that refund has been paid to Mr. Ivey. So there's nothing, there's no jurisdiction that needs to be exercised. Could you give us in a nutshell your harmonization of 7433 and 6402G? Well, so 6402G, essentially they can work hand in hand because there's no longer an offset in place that's now all been reversed. We haven't taken the position that 6402G also precludes jurisdiction to review damages. And because also it's unnecessary to get to that question because 7433 itself precludes jurisdiction to review damages because there's no waiver of sovereign immunity in this case. I'm not sure that I've gotten quite to your question. If I've misunderstood, please. Go ahead. Oh, okay. There's another question. Yeah, I'm sorry, I'm sorry. I thought you were looking for something to ask a question. If I am, I haven't found it. So on the issue of the damages, which is the damages claim is what there is jurisdiction for this court to consider. That's the claim that's not moved. But our claim is that the district court correctly held that it lacked jurisdiction to review damages under 7433 because 7433 waived sovereign immunity only for damages claims that result from IRS efforts to collect unpaid taxes. Here, the IRS made no efforts to collect unpaid taxes. In fact, the IRS determined that Mr. Ivey had overpaid his taxes. And that's why the IRS instructed or certified to fiscal service that Mr. Ivey was due a refund. And fiscal service took that information, determined that he had this outstanding student loan debt, and offset the refund. And so essentially there's no jurisdiction because the waiver of sovereign immunity doesn't apply because there's no collection of federal tax and there's no action by the IRS, and 7433 requires both of those to apply. If there's no other questions, then thank you. Does Mr. Crum have any time left? Mr. Crum has one minute remaining. That's right. Okay. Thank you. I'd like to make two quick points in my rebuttal. The first is that but for the collection of taxes, we would not be here in this case. The very reason that the IRS If we're talking about but for it, if Mr. Ivey had filed his tax return on time as required by law and for which many people are penalized for violating, we would not be here. That is also true, Your Honor. But even if Mr. Ivey had filed his taxes, Mr. Ivey filed his taxes as soon as he was aware that he had stolen his taxes. And I do think that what's key under Section 7433 is that the IRS and fiscal service got this money through the collection of taxes. It didn't get it through any other mechanism because fiscal service can actually disperse money for any type of situation where the federal government has money to disperse to you, whether it's through civil forfeiture or restitution or something else. And the last thing I would just say is that I'm sorry. Are you alluding to the anterior collection of taxes when money was withheld from wages and that sort of thing? No, Your Honor. In our reply brief, we discuss how the fiscal service is kind of the clearinghouse for the government cutting checks to taxpayers and the citizens. And lots of other people. Right. That's correct, Your Honor. And so fiscal service, if, for example, the government has a civil forfeiture action against me, say they find $10,000 sitting in the backseat of my car and they suspect that and they seize it and I win a claim against the government for that $10,000 back, before the government will give me that $10,000 back, fiscal service will kind of do a checklist to determine whether or not I owe, say, state taxes or federal debt or student loans and will cut out of that refund check that money. And so what we're saying is that the very reason that fiscal service and the IRS were involved in this case is because of tax collection. It wasn't because fiscal service came in and refused to cut a check to Mr. Ivey because it got his money through something else. And the last thing I'd just like to say very quickly is that all parties agree, the district court, the government below, and Mia's court appointed amicus, that Mr. Ivey's bringing two claims, one under Section 6402D, and that claim is moot, and one for damages under Section 7433, and that one is not moot. And that's – I think it's very important to keep those two separate. If the Court has no further questions, we urge it to reverse. Thank you. Mr. Crum, you were appointed to represent Mr. Ivey. He's very lucky that we selected you to represent him. And thank you. Thank you very much.
judges: Henderson, Williams, Ginsburg